UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

HILLERICH & BRADSBY, CO.,                                              PLAINTIFF

v.                                              CIVIL ACTION NO. 3:13-CV-00978-CRS

CHARLES PRODUCTS, INC.                                                 DEFENDANT

## MEMORANDUM OPINION

This matter is before the Court on Plaintiff Hillerich & Bradsby, Co.'s ("Hillerich & Bradsby") and Defendant Charles Products, Inc.'s ("Charles Products") cross motions for summary judgment on Hillerich & Bradsby's breach of contract claims. Hillerich & Bradsby also moves for summary judgment on Charles Products' counterclaim for breach of contract. For the reasons stated below, the Court will grant in part and deny in part Hillerich & Bradsby's motion for summary judgment. The Court will grant in part and deny in part Charles Products' motion for summary judgment.

## BACKGROUND

This case purportedly concerns the suitability of certain imported gift products for sale in the United States at Hillerich & Bradsby's Louisville Slugger Museum Store in Louisville, Kentucky and who must bear the ultimate cost for the portion of lost sales to Hillerich & Bradsby after the remainder of questionable items were pulled from the shelves. Because we find that the essential facts relating to the content and timing of the communications between the parties are undisputed and establish that Hillerich & Bradsby did not seek to revoke the contract

1

in a timely fashion, the Court concludes for the reasons that follow that Charles Products is entitled to judgment on Hillerich & Bradsby's contract claims pertaining to all products except those with an impermissible lead content – the "baseball piggy bank," "rubber die cut mug," and "lunchbox." The Court will also conclude for the reasons that follow that Hillerich & Bradsby is entitled to judgment on its contract claims pertaining to impermissible lead content in the "baseball piggy bank" and "rubber die cut mug." The Court will find that neither party is entitled to summary judgment on Hillerich & Bradsby's contract claim concerning the "lunchbox" product.

Underlying this dispute is the Consumer Products Safety Improvement Act of 2008 ("CPSIA"). Under the CPSIA, manufacturers generally must provide accompanying a shipment of goods designed to be sold to children a certificate of compliance which identifies: "the manufacturer or private labeler issuing the certificate and any third party conformity assessment body on whose testing the certificate depends." 15 U.S.C.A. § 2063(g)(1). At minimum, the certificate must include "the date and place of manufacture, the date and place where the product was tested, each party's name, full mailing address, telephone number, and contact information for the individual responsible for maintaining records of test results." *Id.*

Furthermore, the CPSIA requires manufacturers to place permanent, distinguishing marks on children's products and packaging. *Id.* § 2063(a)(5)(A). These markings are intended to enable:

> (i) the manufacturer to ascertain the location and date of production of the product, cohort information (including the batch, run number, or other identifying characteristic), and any other information determined by the manufacturer to facilitate ascertaining the specific source of the product by reference to those marks; and

> (ii) the ultimate purchaser to ascertain the manufacturer or private labeler, location and date of production of the product, and cohort information (including the batch, run number, or other identifying characteristic).

*Id.*

The CPSIA also mandates that children's products generally must not contain more than one hundred (100) parts per million of total lead content. *See* 16 CFR § 1500.88.

On or about November 29, 2010, the parties entered into an agreement for Charles Products to provide Hillerich & Bradsby with a variety of products to be sold in Hillerich & Bradsby's Louisville Slugger Museum Store. Charles Products began tendering these items on or about February 15, 2011.

After nearly two months of selling these items, Laura Ginnebaugh, the Managing Director of Retail for the museum store, sent Doug Miller, Charles Products' regional sales representative, an email addressing a "Ball and cup set." March 25, 2011 Ginnebaugh Email, ECF No. 39-2. In that email, Ginnebaugh says "Are you sure that the paint is not lead based? There are those pesky CPSIA regulations we have to abide by." *Id.*

On November 16, 2011, approximately nine months after Charles Products began to tender products to Hillerich & Bradsby, Ginnebaugh emailed Miller saying, "I am going to need the certificates (at least the traceability number) for the products we have that are intended for youth under 12." November 16, 2011 Ginnebaugh Email, ECF No. 39-3. Ginnebaugh followed up on November 18, 2011, informing Miller that her "product safety and quality assurance manager is asking for test documentation that proves we are in compliance with CPSIA guidelines…. I knew this was going to catch up to me." November 18, 2011 Ginnebaugh Email, ECF No. 39-4. The parties sent additional emails to each other after November 18, 2011 relating to certificates of compliance that would meet the standards under the CPSIA.

On February 10, 2012, Ginnebaugh contacted Miller in an email about the lack of tracking labels as required by the CPSIA on Charles Products' products: "I will HAVE to have some sort of identifying number on these products…. I have a REALLY bad feeling about this…." February 10, 2012 Ginnebaugh Email, ECF No. 39-9 (emphasis in original). The parties sent additional emails to each other after February 10, 2012, relating to proper product labeling that would meet the standards under the CPSIA.

On April 17, 2012, Hillerich & Bradsby informed Charles Products that one of the products – a rubber die cut mug – was tested for its lead content and that the results showed that some rubber colors exceeded the CPSIA lead content limit. Hillerich & Bradsby stopped selling the mugs. On May 22, 2012, Hillerich & Bradsby emailed Charles Products indicating that the baseball piggy bank and lunchbox were nonconforming due to excess lead content. May 22, 2012 Whitney Pfister Email 12, ECF No. 39-10. This email also informed Charles Products that Hillerich & Bradsby "had to pull all of the items from the sales floor…" and sought "to return all of the items in question for a full refund of the purchase price." *Id.* at 13. Discussions continued between the parties relating to the sufficiency of the products' tracking label markings.

After receiving Hillerich & Bradsby's test reports on or about July 12, 2012, Marshall Cannon, CEO of Charles Products, emailed Hillerich & Bradsby on July 24, 2012, saying that Charles Products would dispose of the piggy banks and was "looking at switching the handle with a compliant part." July 24, 2012 Cannon Email 17, ECF No. 36-11; *see also* Doug Miller Email July 12, 2012 4-5, ECF No. 39-10.

On August 14, 2012, Hillerich & Bradsby, after saying it had consulted with the Consumer Products Safety Commission ("CPSC") concerning the items' tracking label

4

markings, informed Charles Products it would "be returning all noncompliant product to you [Charles Products] for credit." Suzanne Bowman Email August 14, 2012 15, ECF No. 36-10.

Hillerich & Bradsby had sold a substantial number of some items Charles Products sent the company. For example, Charles Products sent Hillerich & Bradsby approximately 1,514 "s-shaped timers" and only returned approximately 107 timers. *See* Item History 19, ECF No. 36-4; Charles Products CPSIA Matrix 3, ECF No. 36-4. Charles Products also sent Hillerich & Bradsby approximately 748 "batter ducks" (34 returned), 4,452 "Stress Balls" (1,394 returned), and 1,001 "LSM&F Big Rig Trailers" (263 returned). *See* Item History, ECF No. 36-4, 36-5; Charles Products CPSIA Matrix 3, ECF No. 36-4.

Hillerich & Bradsby sold only a small fraction of the amount of some items received from Charles Products. For example, Charles Products sent Hillerich & Bradsby approximately 1,443 "#1 Bunny H2O Cups" (1,338 returned), 1,438 "Kids Pop Up Water Bottles" (1,236 returned), and 2,472 "#1 Bunny Sippy Cups" (2,321 returned). *See* Item History, ECF No. 36-4, 36-5; Charles Products CPSIA Matrix 3, ECF No. 36-4. However, over a period of approximately a year and a half, Hillerich & Bradsby sold hundreds of products it now alleges are nonconforming.

Charles Products picked up the products on September 14, 2012. In October 2012, Charles Products hired a division of Underwriters Laboratory to review the disputed products to determine whether any products were noncompliant with the CPSIA and, if so, how to bring them into compliance. Charles Products advised Hillerich & Bradsby of the results of the testing on November 9, 2012.

Hillerich & Bradsby filed a breach of contract claim against Charles Products alleging noncompliance with the CPSIA. Charles Products filed a counterclaim alleging breach of contract for ordered but undelivered products to Hillerich & Bradsby.

## STANDARD

Before granting a motion for summary judgment, the Court must find that "there is no genuine issue of material fact such that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[W]here the moving party has the burden—the plaintiff on a claim for relief or defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (internal quotations and emphasis omitted).

The Court must view the evidence in a light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must show that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence ... of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

When both parties move for summary judgment, this Court "must evaluate each motion on its merits and view all facts and inference in the light most favorable to the nonmoving party." *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 506 (6th Cir. 2003).

## DISCUSSION

Both parties moved for summary judgment on Plaintiff's claim for breach of contract. Plaintiff moved for summary judgment on Defendant's counterclaim for breach of contract. The Court will assess each claim in turn.

1. **<u>Cross-Motions for Summary Judgment on Plaintiff Hillerich & Bradsby's Claim for Breach of Contract</u>**

Both parties move for summary judgment on Hillerich & Bradsby's claim for breach of contract. The Court will grant Hillerich & Bradsby's motion for summary judgment on its breach of contract claim relating to the baseball piggy bank and rubber dye cut mug products. The Court will grant Charles Products' motion for summary judgment with respect to all other items except relating to the lunchbox.

**a. Timely Revocation of Tendered Goods**

Under Kentucky law governing the revocation of tendered goods, "[w]here a tender has been accepted (a) the buyer must *within a reasonable time* after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy…" KRS § 355.2-607 (emphasis added). Whether an action is taken within a reasonable time "depends on the nature, purpose, and circumstances of the action." *Id.* § 355.1-205. While this is generally a question for the trier of fact, "There are simply situations in which a buyer has delayed so excessively that his actions become untimely as a matter of law." *Chernick v. Casares*, 759 S.W.2d 832, 834 (Ky. Ct. App. 1988).

Beginning about February 15, 2011, Charles Products tendered to Hillerich & Bradsby the relevant products. Hillerich & Bradsby accepted those products and began to sell them in the

7

museum store. While lead content in products is not readily identifiable, the lack of a certificate of compliance within a shipment or failure to properly label a product is immediately ascertainable upon delivery.

Hillerich & Bradsby's representative, Laura Ginnebaugh, knew CPSIA regulations applied to these products. *See* March 25, 2011 Ginnebaugh Email, ECF No. 39-2 ("There are those pesky CPSIA regulations we have to abide by."). Yet neither Ginnebaugh nor anyone at Hillerich & Bradsby contacted Charles Products concerning certificates of compliance until at the earliest November 16, 2011 – approximately nine months after the initial non-conforming tender. *See* November 16, 2011 Ginnebaugh Email, ECF No. 39-3. Indeed, Ginnebaugh's email to Doug Miller at Charles Products shows that Hillerich & Bradsby knew it should have addressed this issue earlier than nine months after it began receiving shipment. *See* November 18, 2011 Ginnebaugh Email, ECF No. 39-4 (Ginnebaugh informing Miller that Ginnebaugh's "quality assurance manager is asking for test documentation that proves we are in compliance with CPSIA guidelines…. I knew this was going to catch up to me.").

Further, Ginnebaugh did not contact Miller about the lack of tracking labels on Charles Products' products until February 10, 2012: "I will HAVE to have some sort of identifying number on these products…. I have a REALLY bad feeling about this…" February 10, 2012 Ginnebaugh Email, ECF No. 39-9 (emphasis in original). During the time of these email conversations, Hillerich & Bradsby continued selling Charles Products' products. Hillerich & Bradsby did not remove these items from the museum store shelves until May 22, 2012, and did not inform Charles Products it was revoking the acceptance of the goods until August 14, 2012 – approximately a year and half after the initial non-conforming tender. *See* August 14, 2012 Bowman Email 2, ECF No. 39-19.

8

This is a situation where "a buyer has delayed so excessively that his actions become untimely as a matter of law." *Chernick*, 759 S.W.2d at 834, *see also Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp.*, 72 F.3d 190, 201 (1st Cir. 1995) (noting that under the UCC a buyer cannot "accept deliveries of a vast number of items over a period of a year and a half and then suddenly revoke the acceptance of all of them based on defects whose presence was known or suspected during the entire period").

Hillerich & Bradsby should have discovered the failure to include certificates of compliance and proper product labeling a short period of time after receipt, if not immediately. Instead, Hillerich & Bradsby sold hundreds of these products for approximately a year and a half. Accepting deliveries for approximately nine months without mentioning readily identifiable defects and waiting approximately one and a half years to revoke bars Hillerich & Bradsby from now properly revoking its contract. Whatever the reasonable amount of time to raise such issues and subsequently timely revoke a contract, no reasonable trier of fact could find that obvious and immediately ascertainable defects were timely revoked after this unreasonable, substantial delay.

As an impermissible lead content is not an obvious breach, however, Hillerich & Bradsby did reasonably revoke the contract after relying on Charles' Products assurances pertaining to the three products – baseball piggy bank, lunchbox, and rubber die cut mug – containing an impermissible amount of lead.

The Court will grant Defendant Charles Products' motion for summary judgment as it pertains to Hillerich & Bradsby's breach of contract claim for Charles Products' failure to provide certificates of compliance and proper labeling.

**b. Meaningful Opportunity to Seasonably Cure the Defects**

9

Under Kentucky law, a "buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it (a) on the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured…." KRS § 55.2-608(1).

Both parties agree Charles Products advised Hillerich & Bradsby that any defective products would be brought into conformance. The only question is whether Charles Products had reasonable time to cure the remaining defective products. As Charles Products admits the piggy bank and rubber die cup were not curable, this affirmative defense does not apply to that aspect of Hillerich & Bradsby's claim.

On May 22, 2012, a Hillerich & Bradsby representative emailed Charles Products indicating that the lunchboxes were nonconforming due to lead content. May 22, 2012 Whitney Pfister Email 12, ECF No. 39-10. Emails prior to this date inquiring whether the products were generally conforming did not give Charles Products sufficient notice that the lunchboxes did not conform. General inquiry emails are not the same as demanding specific products to be cured or an affirmative statement of non-compliance.

After receiving Hillerich & Bradsby's test reports on or about July 12, 2012, Marshall Cannon, CEO of Charles Products, emailed Hillerich & Bradsby saying that Charles Products would dispose of the piggy banks and was "looking at switching the handle with a compliant part." July 24, 2012 Cannon Email 17, ECF No. 36-11; *see also* Doug Miller Email July 12, 2012 4-5, ECF No. 39-10. Cannon also requested information on when to "reconvene the conference call" concerning how to deal with the issues. *Id.* On August 14, 2012, approximately three weeks after Cannon advised Hillerich & Bradsby that Charles Products was investigating

10

how to cure the defect, Hillerich & Bradsby informed Charles Products that it was revoking the acceptance of goods. *See* August 14, 2012 Bowman Email 2, ECF No. 39-19.

These facts may suggest Charles Products would have had difficulties in contacting its overseas manufacturer to replace the defective handles in a short period of time. However, viewing the evidence in the light most favorable to Hillerich & Bradsby, a reasonable trier of fact could find that Charles Products was given a seasonable amount of time to cure the defect. There remains a genuine issue of material fact on whether Hillerich & Bradsby allowed Charles Products a meaningful opportunity to cure the defects.

The Court will deny both parties' motion for summary judgment as it pertains to Hillerich & Bradsby's breach of contract claim based on Charles Products' supplying lunchboxes with an impermissible lead content.

c. **Baseball Piggy Bank and Rubber Die Cut Mug**

The parties agree the baseball piggy bank and rubber die cut mug contained impermissible amounts of lead under the CPSIA. Charles Products "has conceded liability on these products and agreed to provide to [Hillerich & Bradsby] a credit when the parties still had a commercial relationship." Def.'s Resp. Pl.'s Mot. Summ. J. 13, ECF No. 41.

The Court will grant Hillerich & Bradsby's motion for summary judgment in part for breach of contract due to the baseball piggy bank and rubber die cut mug containing impermissible amounts of lead.

2. **Defendant Hillerich & Bradsby's Motion for Summary Judgment on Plaintiff Charles Products' Counterclaim**

11

Hillerich & Bradsby's only argument in support of its motion for summary judgment on Charles Products' counterclaim is that Charles Prodcuts failed to provide a computation of damages in its disclosure as required under Fed. R. Civ. P. 26(a)(1)(A): "a party must, without awaiting a discovery request, provide to the other parties: … (iii) a computation of each category of damages claimed by the disclosing party…."

Hillerich & Bradsby offers no evidence or even argument that there is "no genuine issue of material fact" that would lead this Court to find the Hillerich & Bradsby is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court will deny Hillerich & Bradsby's motion for summary judgment.

A separate order will be entered in accordance with this opinion.

November 13, 2015

**Charles R. Simpson III, Senior Judge**
**United States District Court**